UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

WILLIAM BRADLEY ROBERTS,

Plaintiff,

vs.                                           3:22-CV-229

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

Defendant.

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Claimant's claims for Disability Insurance Benefits and Supplemental Security Income were denied administratively by Defendant Commissioner following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of that final decision of the Commissioner. Each party filed a dispositive motion [Docs. 18, 23] and supporting brief [Docs. 19, 24]. For reasons set forth below, the undersigned **RECOMMENDS** that Claimant's Motion [Doc. 18] be **GRANTED** and the Commissioner's Motion [Doc. 23] be **DENIED**.

## I.     APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S.D. Ohio 2019). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1.      Has the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4.      Considering the claimant's [Residual Functional Capacity ("RFC")], can he or she perform his or her past relevant work?

5.      Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520. A claimant has the burden to establish benefits entitlement by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see also Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 959 (S.D. Ohio 2019). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II.      PROCEDURAL AND FACTUAL OVERVIEW

William Bradley Roberts ("Claimant") filed for Social Security disability benefits on September 8, 2019, and for supplemental security income on October 9, 2019. (Tr. 16)[1]. In both applications Claimant alleged a disability onset date of September 2, 2019. *Id*. The claims were denied initially and on reconsideration. (Tr. 129, 133, 146). Thereafter, Claimant requested a hearing, and a telephonic hearing was conducted by ALJ David J. Benedict on April 19, 2021. (Tr. 41). Following the hearing, the ALJ issued a decision on June 2, 2021, finding that Claimant

---

[1] References to page numbers in the Transcript, designated as "(Tr. ___)" are to the large black numbers in the bottom, righthand corner of the page.

was not disabled. (Tr. 35). In his decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024;

2. The claimant has not engaged in substantial gainful activity since September 2, 2019, the alleged onset date;

3. The claimant has the following severe impairments: effects of a stroke with left hemiparesis, cognitive disorder, major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), and alcohol dependence in remission;

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1:

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday, except [he] can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds. [He] can never operate motor vehicles. The claimant is limited to simple, routine, repetitive tasks of unskilled work; can maintain attention and concentration no longer than two-hour blocks; and requires a low stress environment defined as no fast-paced production requirements, only simple work-related decisions, with few or no changes in the work setting;

6. The claimant is unable to perform any past relevant work;

7. The claimant was born on March 7, 1983, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;

8. The claimant has at least a high school education;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills;

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform;

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 2, 2019, through the date of this decision.

*See* (Tr. 18-35). Claimant subsequently requested Appeals Council review. (Tr. 205-07). The Appeals Council denied Claimant's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security. *Id*.

On appeal, Claimant raised three issues. The first two relate to the ALJ's evaluation of the medical evidence, and the third relates to the appointment of the ALJ and Appeals Council Judges in this case under the Federal Vacancies Reform Act and the Appointments Clause. Regarding the third issue, the Commissioner filed supplemental briefs pursuant to Local Rule 7.1(d). [Docs. 25, 26]. Claimant subsequently filed a Notice withdrawing that issue. [Doc. 27]. Accordingly, the Court will address only Claimant's first two issues which address the ALJ's evaluation of the medical evidence of record.

Claimant first argues the ALJ's RFC determination is not supported by substantial evidence, because the ALJ failed to properly consider Claimant's impairments along with the work restrictions imposed due to those impairments. [Doc. 19, p. 9]. Specifically, Claimant points the Court to the March 2021 opinion offered by Dr. Anneliese Boettcher and argues that the ALJ should have included limitations from that report in his RFC determination. *Id.* at 10, 12. Claimant contends that the ALJ failed to properly consider the full extent of his limitations in learning level, bilateral dexterity, ability to walk, ability to interact with others, and cognitive functioning and the impacts of those limitations on Claimant's work restrictions. *Id.* at 10-17.

Second, Claimant argues that the ALJ failed to appropriately consider the medical opinion evidence of record. *Id.* at 17. In furtherance of this argument, Claimant asserts that the ALJ improperly rejected all treating opinions, aside from one, because of the dates on which the opinions were rendered. *Id.* at 18. More specifically, Claimant submits that the ALJ rejected all opinions which were authored within one year after Claimant's stroke. Claimant contends that instead of engaging in this wholesale rejection, the ALJ should have more fully articulated his decision as to each provider using a list of factors including whether the opinions were supported by and consistent with the record. *Id.* Regarding the opinions accepted by the ALJ, Claimant again points to Dr. Boettcher's March 2021 opinion and asserts that the ALJ should have included all work restrictions from that opinion in his RFC determination. *Id.* at 19-20, 22. Claimant then turns to the opinions of state agency consultants Drs. Cecily Turner and James Pinkston, noting that while those opinions were authored more than one year after Claimant's stroke, the consultants relied upon evidence which was produced prior to the one-year mark. *Id.* at 22-24. In sum, Claimant asks the Court to remand the case for further consideration.

In response, the Commissioner maintains that the ALJ did not err in his decision. In addressing Claimant's arguments regarding the ALJ's RFC determination, the Commissioner submits that the ALJ properly considered the entire record, and further contends that the ALJ's RFC determination is supported by substantial evidence. *Id.* at 16, 24. In supporting these contentions, the Commissioner points to portions of the record which reflect improvement in Claimant's mental and physical health symptoms, including cognitive functioning, social interaction, range of motion, gait, and independence in performing daily activities. *Id.* at 16-20. Further, the Commissioner notes that the ALJ may consider evidence of any treatment for the alleged conditions and the effectiveness of that treatment. *Id.* at 19. The Commissioner asserts that

the ALJ properly considered Claimant's symptoms in this case and appropriately limited Claimant's RFC in light of the medical evidence. *Id.* at 19-23.

Additionally, the Commissioner takes issue with Claimant's argument that the ALJ failed to properly consider medical opinion evidence. *Id.* at 21-23. The Commissioner contends that by finding certain opinions unpersuasive because they were rendered within one year of Claimant's stroke, the ALJ did consider the required supportability and consistency factors. *Id.* at 21. The Commissioner argues that the older medical opinions were "not reflective of the full extent of [Claimant's] recovery" and thus were not consistent with the trajectory of Claimant's symptoms nor supported by more recent records. *Id.* at 22. Accordingly, the Commissioner asks the Court to affirm the decision of the ALJ.

In reviewing the transcript filed in this matter, the Court has reviewed and considered Claimant's medical records and will address them as necessary to fully analyze the issues raised by the parties. (Tr. Ex. 1F-19F). In evaluating those records, the Court notes that all were generated on or after the alleged onset date. Additionally, the Court has reviewed and considered the opinions provided by state agency medical and psychological consultants on initial consideration and reconsideration of Claimant's applications for benefits. (Tr. Ex. 3A-4A, 7A-8A). Lastly, the Court has evaluated the hearing testimony. (Tr. 43-64). Accordingly, the Court will now address the errors alleged by Claimant in the context of the parties' arguments, the record before the Court, and applicable law.

### III.    LEGAL ANALYSIS

Claimant asserts that the ALJ erred in formulating the RFC in his decision. *See* 20 C.F.R. § 404.1520 (noting that step four of an ALJ's five question review involves formulating a claimant's residual functional capacity). Specifically, Claimant contends that the ALJ improperly evaluated evidence of his impairments in relation to work restrictions and that the ALJ improperly

evaluated opinion evidence offered by various treating physicians and state agency medical and psychological consultants. In reviewing the ALJ's decision for error, the Court must keep in mind that the ALJ is entitled to a "zone of choice" in determining whether Claimant is disabled and if the facts could support a ruling either way, then the ALJ's decision must be upheld. *Blakely*, 581 F.3d at 406.  As such, the Court will not disturb the ALJ's decision even if the Court would have decided the matter differently so long as the ruling was rendered in compliance with applicable law and is based on substantial evidence. "Substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (internal citations omitted); *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 534 (6th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)).

As part of the multi-step review of a Social Security case, the ALJ must make a residual functional capacity determination. *See* 20 C.F.R. § 404.1520. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. . .." 20 C.F.R. § Pt. 404, Subpt. P, App. 2(c). Applicable regulations provide the following guidance for the agency when assessing a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources." 20 C.F.R. § 404.1520c.

Instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. This "new rule" for the evaluation of opinion evidence departs from the rule applied to claims filed before March 27, 2017. *Compare* 20 C.F.R. § 404.1527 (the "old rule") and 20 C.F.R. § 404.1520c (the "new rule"). The new rule notably "reduc[es] the articulation standards required for ALJs in assessing medical source opinions." 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.). As other courts have noted in applying the new rule, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted). In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2).

When an ALJ engages in his or her review of the records, the ALJ need not "explain every piece of evidence in the record." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir.

2018). At the same time, the Court still must carefully consider whether the ALJ fully considered the entire record. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (explaining that administrative courts may not focus on some evidence, while ignoring other evidence); *see e.g. Bunch v. Comm'r of Soc. Sec.*, No. CV 20-148-HRW, 2021 WL 3269258, at *2 (E.D. Ky. July 30, 2021). The requirement that an ALJ fully review the record is designed to protect a claimant from "bewilder[ment] when told by an administrative bureaucracy that she is not..." disabled when "[her] physician has deemed [her] disabled...." *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170 at *6 (E.D. Mich. Aug. 13, 2021) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

When considering a claimant's subjective statements about symptoms, the ALJ must consider medical and relevant nonmedical evidence. *Thompson v. Saul*, No. 5:20-CV-00002-MAS, 2021 WL 895624, *3 (E.D. Ky. Mar. 9, 2021). If there is a discrepancy between the claimant's subjective complaints and the objective medical evidence relating to the degree of impairment-related symptoms, the ALJ should not necessarily "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms." Social Security Ruling 16-3p. Instead, the regulations require the ALJ to consider factors relevant to the claimant's symptoms such as the claimant's daily activities; the duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type and effectiveness of any medication; and any other treatment or measures to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The Court will now turn to an analysis of the ALJ's RFC determination, wherein he found that Claimant retained the ability to perform light work. In doing so, the Court will consider the

ALJ's analysis of Claimant's physical and mental health impairments in light of the evidence of record.

### a. *Claimant's Physical Impairments*

Claimant first asserts that the ALJ did not meaningfully address his physical impairments when formulating an RFC. Claimant asserts that he suffers from impairments of bilateral dexterity and left leg spasticity. As to Claimant's bilateral dexterity, the ALJ found that Claimant could perform light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567. Additionally, the ALJ questioned a Vocational Expert ("VE") at the telephonic hearing about limiting a hypothetical individual to "occasionally" handling, fingering, and feeling, but the ALJ did not include any such dexterity limitations in his RFC. (Tr. 24, 63).

Claimant contends that his stroke affected his bilateral dexterity in that he has lost the use of his right arm, which is particularly problematic for Claimant because he is right-handed. [Doc. 19, p. 11]; *see also* (Tr. Ex. 19F, p. 815). While the ALJ acknowledged Claimant's bilateral dexterity challenges in his opinion, he found that Claimant's reduced fine motor skills did not rise to a listing level, and he did not account for any loss of the use of Claimant's right arm in his RFC determination. (Tr. 24). Claimant states that he was repeatedly found to have limited motor skills and during his hearing, testified to experiencing an ongoing loss of feeling and numbness in his right arm. (Tr. 49). Specifically, Claimant testified that his right hand is numb, but he does have full range of motion. In arguing that the ALJ failed to properly consider his issues with bilateral dexterity, he notes that the ALJ accepted a March 2021 opinion of Dr. Boettcher wherein she found that Claimant would benefit from occupational therapy for fine motor skills, and that Claimant's motor skills in his dominant hand were in the less than .1 percentile of grooved

pegboard testing. [Doc. 19, p. 12] (citing Tr. Ex. 18F, p. 805; 19F, p. 817). Further, Claimant points to his cervical spine pathology which is consistent with his reported right arm limitations. [Doc. 19, p. 11-12] (citing Tr. Ex. 2F, p. 504) (containing results from an MRI of the C-spine, taken days after Claimant's stroke, showing "symmetric disc bulge at C6-C7 resulting in mild narrowing of the spinal canal and moderate bilateral neural foraminal narrowing").

In making his findings, the ALJ noted that a February 14, 2020 evaluation indicated that Claimant's motor skills had "gotten much better," and he can perform various activities of daily living such as grooming and cooking. (Tr. Ex. 7F, p. 654) (containing statements that Claimant's motor skills have "[g]otten much better. Numbness in right hand and problems with fine motor movements" and Claimant can cook limited meals); *see also* (Tr. Ex. 1E, p. 246-47) (containing a third-party function report completed by Claimant's sister indicating that he can microwave food, make sandwiches, get dressed, take showers, and do some chores). Further, the ALJ cited a visit to Dr. Justin Salerian on January 26, 2021, in which Claimant was found to have full strength in the bilateral upper extremities. (Tr. 22; Tr. Ex. 17F, p. 795). Additionally, Claimant testified that he believed he could carry 20 to 30 pounds and given that light work "involves lifting no more than 20 pounds at a time," the ALJ's RFC formulation appears to be consistent with both Claimant's subjective beliefs about his abilities to lift and carry and the objective medical evidence. Given the evidence of record, including Claimant's own testimony, the Court cannot find the ALJ erred in failing to include further limitations related to Claimant's challenges with bilateral dexterity when formulating his RFC.

Next, Claimant avers that he has lost the "ability to stand and walk for 6-hours a day" and requires unscheduled rest breaks. [Doc. 19, p. 13]. The ALJ limited Claimant's RFC as follows: "standing and/or walking for a total of six hours in an eight-hour workday and sitting

for six hours in an eight-hour workday, except [he] can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds." Claimant points to evidence in the record showing he has pain in his left knee that makes it difficult for him to walk. [Tr. Ex. 19F, p. 815] (reflecting that Claimant "walked slowly with a light limp"). However, the record reflects that Claimant received Botox injections, which were successful at improving his knee pain. (Tr. Ex. 13F, p. 706) (noting that Claimant's gait was dramatically improved six months after first injection). Unfortunately, while it was recommended that Claimant continue receiving the injections because of the tightness that developed after they wore off, he was financially unable to do so because he lost his insurance coverage when he moved to Tennessee from Louisiana. (Tr. Ex. 13F, p. 706; 14F, p. 735).

Though Claimant reported subjective knee pain, rendering him unable to walk properly, the ALJ found that Claimant did not have a medically determinable impairment in his knee because an X-ray did not show abnormal findings. (Tr. 20) (citing Tr. Ex. 16F, p. 775) (reflecting no acute fractures or dislocations in left knee). Additionally, records indicate that Claimant's pain and gait improved with the help of a walker, injections, and knee brace. However, Claimant counters that these findings should not be determinative because he likely had a meniscus tear, based on his subjective complaints and a treating doctor's statement, and meniscus tears do not show up on X-rays. [Doc. 19, p. 13-14]; (Tr. Ex. 16F, p. 779). Additionally, during his last evaluation with Dr. Boettcher in 2021, she documented that Claimant was continuing to wear a brace and that he reported to her that he had been forced to discontinue walking like he had been due to a possible lateral meniscus tear. (Tr. Ex. 19F, p. 814).

Under the relevant regulations, "[a]n individual's symptoms, such as pain… will not be found to affect the ability to perform work-related activities… unless medical signs or laboratory

findings show a medically determinable impairment is present." Social Security Ruling 16-3p. Here, while no impairment was discernable on an X-ray, multiple physicians opined that Claimant may have a meniscus tear, and Claimant reported that he had difficulty walking which improved with the administration of Botox injections. Claimant does not appear to have undergone testing to confirm whether he does in fact have a meniscus tear. *See* (Tr. Ex. 16F, p. 779) (reflecting a "[c]oncern for lateral meniscus injury, recommended PT with potential evaluation by orthopedist"). However, the Court acknowledges the difficulties that Claimant faces in obtaining further testing given his lack of insurance and financial condition.

The Court finds that it is a close call as to whether the ALJ's decision that Claimant could stand and walk for 6 hours in an 8-hour workday is supported by substantial evidence. At this time, given Claimant's clinical diagnosis of a likely meniscus tear and his financial inability to obtain the necessary testing, when coupled with his ongoing need for a brace, the Court has difficulty concluding that the ALJ's RFC formulation as to Claimant's physical abilities is supported by substantial evidence. While this Court is not specifically recommending remand based upon this issue, if the District Court determines that remand is required, the ALJ should further consider this issue. The Court will now turn to considering whether the ALJ properly assessed the record evidence in evaluating Claimant's mental impairments and considering them in conjunction with formulating Claimant's RFC.

### b. *Claimant's Mental Impairments*

Claimant next contends that the ALJ improperly assessed certain of his mental impairments. Claimant asserts that he suffers from impairments in learning level, ability to interact with others, ability to maintain attention and in remembering. Evidence shows that these impairments appear to have been caused by a stroke Claimant suffered in September of 2019. The

ALJ limited Claimant's RFC as follows: "[t]he claimant is limited to simple, routine, repetitive tasks of unskilled work; can maintain attention and concentration no longer than two-hour blocks; and requires a low stress environment defined as no fast-paced production requirements, only simple work-related decisions, with few or no changes in the work setting."

First, Claimant points to Dr. Boettcher's March 2021 report, which was accepted by the ALJ, in which she found that Claimant had a low learning ability. [Doc. 19, p. 10]. She performed tests of various areas of mental functioning, and Claimant scored "exceptionally low" in multiple areas of learning and memory. (Tr. Ex. 19F, p. 816). He had "significantly more difficulty learning information that was presented verbally than visually." *Id.* at 812. She had also previously found Claimant to be in the second percentile of learning ability in her February and March 2020 evaluations. *Id.* at 813. Claimant contends that the ALJ did not mention his learning ability nor include it in the RFC. In discussing this report, the ALJ did not discuss the exam Dr. Boettcher performed other than to say, "her exam revealed normal comprehension." (Tr. 21). The ALJ did not mention the areas in which Claimant scored "low average" or "exceptionally low." *See* (Tr. Ex. 19F, p. 815-17). Next, Claimant argues that his ability to interact with others is impaired, because a treating physician noted that he was withdrawn and depressed, and a state agency consultant found that he could only "relate to others on a superficial work basis." [Doc. 19, p. 15]. However, the ALJ pointed to numerous other examples on the record where Claimant interacted well with providers. *See* [Doc. 24, p. 17-18]. Given this evidence, the Court cannot find the ALJ's decision not to include further limitations related to Claimant's challenges with relating to others fell outside of the zone of choice he is afforded.

Regarding Claimant's memory and ability to maintain attention, Claimant contends that the ALJ should have included additional limitations in his RFC formulation. Specifically, Claimant

takes issue with the ALJ's conclusion that Claimant could concentrate for 2-hour periods. The record shows that Claimant does have significant memory and attention issues. At a visit on January 26, 2021, Dr. Salerian opined that "[u]nfortunately because of his overall good motor and physical status, he seems to fall in a gap of disability. It is actually difficult for an outside observer to realize that he actually has significant intellectual disability from stroke unless he gets advanced testing proving such." (Tr. Ex. 17F, p. 795). Claimant then underwent multiple evaluations with Dr. Boettcher. In her March 2021 report, she found that while Claimant had experienced some improvements in his depression, anxiety, language, and memory, he continued to struggle with cognitive tasks in executive functioning. (Tr. Ex. 19F, p. 812). She provided the following examples: Claimant struggled encoding information unless it was meaningfully organized for him or presented visually; his processing speed remained significantly reduced; he experienced word-finding difficulty; he was forgetful of day-to-day activities. *Id.* at 812-13. She explained that his family had to provide "significant oversight to ensure his safety" and to remind him to perform tasks of daily functioning. *Id.* at 812. The ALJ did note that Dr. Boettcher found Claimant's executive functioning remained problematic. (Tr. 30). Additionally, Dr. Boettcher found that a diagnosis of Major Neurocognitive Disorder "does seem warranted" and "is warranted". (Tr. Ex. 18F, p. 805, 810; 19F, p. 812). The ALJ misquoted the report when he stated that Dr. Boettcher "concluded that a diagnosis of major neurocognitive disorder did not seem warranted." (Tr. 30).

In addition to the medical evidence, Claimant testified regarding his ongoing mental health difficulties. Claimant testified that his memory is "shot," that he cannot remember to refill toilet paper, that he cannot remember what he had for breakfast yesterday, and that he cannot remember things he was just told. (Tr. 50-55). The ALJ found Claimant's statements about his symptoms to be inconsistent with objective evidence. (Tr. 25). However, he did not explain how it was

inconsistent with the evidence of record. The ALJ's failure to offer any support for this assertion is especially problematic given that the ALJ believed Dr. Boettcher had found Claimant not to suffer from Major Neurocognitive Disorder when in fact she had diagnosed Claimant with the disorder. That diagnosis supports Claimant's subjective complaints about his memory difficulties. Moreover, the fact that Claimant tested "exceptionally low" in areas of immediate memory, delayed recall, and retention percentage provides medical support for Claimant's subjective complaints. (Tr. Ex. 19F, p. 816). Additionally, Claimant's records document that he appeared to be impulsive, made irrelevant comments, and would play games and music on his phone while therapists were attempting to help him at the Touro Outpatient Clinic. (Tr. Ex. 5F, p. 573, 629, 633).

In addition to his stroke-related mental health issues, Claimant also has been diagnosed with ADHD, which impacts Claimant's ability to maintain attention and focus. He is prescribed Adderall for this condition, and Claimant reports that he is compliant with taking his medication and does not experience side effects from it. (Tr. Ex. 4F, p. 545). However, the ALJ noted that during his first evaluation with Dr. Boettcher in February of 2020, Claimant had been off the medication for a few days prior. (Tr. 23). There is no evidence in the record to demonstrate that Claimant was not taking his medication as prescribed during and around the times of his other doctor visits and evaluations, and Claimant affirmatively testified that he has phone reminders set so that he does not forget to take his "medications." (Tr. 54). Moreover, the record demonstrates that Claimant's father reminds him to take his medication as well because Claimant's phone reminders alone have proved insufficient. (Tr. 814).

The record evidence indicates that Claimant cannot focus on or remember verbal instructions but can maintain some attention to written instructions. A progress report from the

Touro Outpatient Clinic dated January 8, 2020, indicated that Claimant was moderately impulsive and inappropriate during formal testing, could not repeat stories, and had difficulty in word generation. (Tr. Ex. 5F, p. 629). Then during a visit on January 22, 2020, Claimant was tasked with stating months of the year in reverse order while tossing and catching an object. *Id.* at 631. He made errors on 5/6 trials. *Id.* However, he later asked to apply to volunteer at the clinic and was able to complete written application forms, which required sustained and alternating attention. *Id.* at 633. As explained above, Dr. Boettcher's report also confirmed that Claimant could understand information better visually than verbally. The ALJ did not discuss this distinction in detail nor explain why it was not addressed in the RFC formulation.

Further, the ALJ found Claimant to be independent in areas of daily functioning while noting only that Claimant's father helps him manage money and remember appointments. (Tr. 28, 30-31). The ALJ also limited Claimant's residual functional capacity by including a limitation that he can never operate motor vehicles. (Tr. 24). Notes from Claimant's providers and Claimant's testimony both indicate that he is significantly more dependent on his family for support with these activities than was acknowledged by the ALJ in his decision. (Tr. Ex. 19F, p. 814) (documenting Dr. Boettcher's finding that Claimant's father reminds him to shower and/or bathe, and he depends on his father to manage finances and medication); (Tr. Ex. 19F, p. 812)(opining that Claimant's family should continue to provide oversight for Claimant and that they do so for his safety); (Tr. Ex. 3F, p. 527) (documenting that after rehabilitation at Touro Infirmary, Claimant required varying levels of assistance in eating, bathing, grooming, ambulation, etc.); (Tr. 54-55) (documenting Claimant's testimony about how his father helps him remember to do chores, how he uses phone reminders to assist him with remembering to take medication, how his father takes him to buy groceries since he cannot drive, and that he does not manage his own money); (Tr. Ex.

7F, p. 652) (documenting Dr. Boettcher's finding that Claimant should not drive due to his mental impairments, should continue to receive oversight from his family, and should not attempt to work).

Additionally, Claimant's testimony was confirmed by his sister. (Tr. 33). The ALJ notes that Claimant's sister had advised, among other things, that Claimant had to sit to dress and used a bench in the shower; was unable to use a stove in cooking because of his memory issues, using only the microwave to heat food; that he needed reminders to attend to hygiene and grooming; and that leg spasticity makes it difficult for him to squat and bend. *Id.* The ALJ went on to basically disregard the sister's information stating that her statements "are largely a reiteration of" Claimant's subjective complaints. *Id.* While in many cases it might be appropriate to be more dismissive of a family member's input, in the case at hand the record demonstrates that Claimant's sister has been actively involved in his care since he suffered a stroke and has attended medical appointments with him; thus, she is in a unique position to observe what physical and mental challenges that he faces. *See* (Tr. Ex. 3F, p. 521; 7F, p. 651; 18F, p. 802-10; 19F, p. 812, 814). Additionally, Claimant's sister was not just providing general statements about Claimant's condition but included specific examples. For instance, in addition to the above, Dr. Boettcher's records contain notes about an incident with Claimant relayed by his sister, where she told him repeatedly to stay where he was while she went to get the car but instead Claimant kept following her and appeared unable to understand the verbal instructions that she was providing to him. (Tr. Ex. 19F, p. 813).

Further, the record reveals evidence of Claimant's significant cognitive functioning limitations. Claimant's testimony regarding his difficulty remembering and maintaining attention is supported by objective medical evidence, including a report by Dr. Boettcher which the ALJ

accepted. Dr. Boettcher's records demonstrate that Claimant has a low learning level, a diagnosis of Major Neurocognitive Disorder, and an inability to function independently. Specifically, testing she performed demonstrated that he performed "exceptionally low," the lowest possible designation, in four areas of memory and learning; additionally, he scored "below average" and "low average" in three areas, and only scored "average" or "within normal limits" in two areas and "high average" in one area. (Tr. 816). Moreover, Claimant scored "exceptionally low" on three of the four mental processing categories and "below average" on the fourth. *Id.* Then as to frontomotor functioning, he scored "exceptionally low" or "below average". (Tr. 817).

Given the above, the Court cannot find that ALJ's RFC formulation regarding Claimant's cognitive abilities is supported by substantial evidence, especially his determination that Claimant could concentrate for two-hour blocks. A VE testified during the telephonic hearing that there would be no jobs available to a hypothetical individual with all of the limitations in Claimant's RFC if that individual (1) "required hourly work breaks for ten minutes" or (2) could not maintain attention and concentration for longer than 1-hour blocks. (Tr. 61). Accordingly, if on remand the ALJ finds Claimant requires more breaks or is unable to stay on task for 2-hour blocks, then according to this VE there would be no jobs available to Claimant in the national economy.

### c. *ALJ's Evaluation of Medical Opinions*

Finally, Claimant takes issue with the ALJ's evaluation of the medical opinion evidence. The ALJ considered the opinions of two treating physicians, two state agency medical consultants, and two state agency psychological consultants and found three opinions to be persuasive. (Tr. 31-33). The ALJ only found opinions persuasive if they were authored one year after Claimant's stroke, and the ALJ did not explain his reasoning for establishing this bright

line. The Court assumes that the ALJ used this timeline based upon on the requirement that a person is expected to be disabled for a 12-month period to qualify for disability. *See* (Tr. 16). However, there is a difference between requiring evidence that a condition is expected to render a Claimant disabled for a period of 12-months or more and discarding all medical evidence that was generated during the initial 12-month period.

The ALJ specifically found the opinions of one of Claimant's treating physicians, neurologist Justin Salerian, M.D., to be wholly unpersuasive because Dr. Salerian rendered his opinion that Claimant had significant exertional limitations in April of 2020. (Tr. Ex. 10F). The ALJ found his opinion unpersuasive because it was rendered within one year of his stroke and was inconsistent with the extent of Claimant's later recovery, including Dr. Salerian's later treatment notes. (Tr. 31-32). Next, he found that certain opinions of neuropsychologist Anneliese Boettcher, Ph.D. were unpersuasive, specifically those contained in the Stroke Medical Source Statement issued in April 2020. (Tr. Ex. 4F). In that report, Dr. Boettcher found Claimant to have significant cognitive functioning limitations. The ALJ stated that this opinion was likewise unpersuasive because it was rendered within one year of Claimant's stroke and was inconsistent with the extent of Claimant's later recovery, including her own report issued in March 2021. (Tr. 32). The ALJ did not address whether he found Dr. Boettcher's February 2020 report (Tr. Ex. 7F) persuasive.

The ALJ also considered opinions of two state agency consultants which he found unpersuasive. State agency medical consultant Sarah Yoakam, M.D. rendered an opinion in March of 2020 at the initial level and found Claimant could perform a full range of light work. (Tr. Ex. 3A, p. 75). The ALJ found the opinion unpersuasive, because it was rendered within one year of Claimant's stroke, even though the ALJ later explained that the opinion was

supported by and consistent with the record. (Tr. 32). Additionally, state agency psychological consultant Joy Kelly, Ph.D. rendered an opinion in February of 2020, finding Claimant to be able to perform simple and some detailed tasks, relate to others on a superficial work basis, and adapt to a work environment. (Tr. Ex. 3A, p. 78). The ALJ found that opinion unpersuasive as well because it was rendered within one year of Claimant's stroke, although the ALJ goes on to explain that the rejected findings by Dr. Kelly were affirmed by another state agency psychological consultant. (Tr. 32-33).

The ALJ found three opinions persuasive. He found that the opinion of Dr. Boettcher rendered in March 2021 was persuasive based on the date it was issued. (Tr. 32). The ALJ discussed some portions of that opinion but left out the low exam scores Claimant received, the discussion of Claimant's ability to remember visual versus verbal instructions, evidence of Claimant's impulsivity, and other relevant information.

In addition to failing to address several of Dr. Boettcher's findings, the ALJ misread the doctor's opinion, stating she found that Claimant did not suffer from Major Neurocognitive Disorder, when in fact she had opined that he did. This error is particularly problematic when considering the findings and limitations of functioning required for a diagnosis of Major Neurocognitive Disorder pursuant to the Fifth Addition of the Diagnostic and Statistical Manual of Mental Disorders, which include:

> A. Evidence of significant cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition) based on:
>> 1. Concern of the individual, a knowledgeable informant, or the clinician that there has been a significant decline in cognitive function; and

2. A substantial impairment in cognitive performance, preferably documented by standardized neuropsychological testing or, in its absence, another quantified clinical assessment.

B. The cognitive deficits interfere with independence in everyday activities (i.e., at a minimum, requiring assistance with complex instrumental activities of daily living such as paying bills or managing medications)…

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § 780.09 (5th ed. 2013) ("DSM-V"). The Court finds that this error alone might well be fatal to the Court being able to find that the ALJ's decision was supported by substantial evidence given the other evidence of record in this matter.

The ALJ further found that the opinion of state agency medical consultant Cecily Turner, M.D. rendered in September 2020, at the reconsideration level, was persuasive based on its date. (Tr. 32). Notably, Dr. Turner opined that within 12 months, Claimant should be able to perform a full range of light work; however, the evidence used to form this opinion is taken from medical records generated within one year of Claimant's stroke. (Tr. Ex. 7A, p. 107). In relying on the opinion of Dr. Turner, the ALJ observed that this opinion was consistent with Dr. Yoakam's earlier opinion, despite having found that opinion unpersuasive. Finally, state agency psychological consultant James Pinkston, Ph.D. rendered an opinion in September 2020 at the reconsideration level which the ALJ found to be persuasive based on its date. (Tr. 32). Dr. Pinkston found that Claimant can "perform simple and some detailed tasks", "relate to others on a superficial work basis", and "adapt to a work environment." (Tr. Ex. 8A, p. 125). However, the ALJ stated that Dr. Pinkston's opinion was consistent with Dr. Kelly's earlier opinion, which the ALJ had also found unpersuasive. Again, all evidence used to form Dr. Pinkston's opinion came from medical records generated within one year of Claimant's stroke. (Tr. Ex. 8A, p. 118-19).

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, *21 (N.D. Ohio Mar. 8, 2021). The ALJ must articulate whether medical opinions are supported and consistent with the record. *Jones*, 392 F. Supp. 3d at 839. Further, "an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, *6 (N.D. Ohio Mar. 11, 2013) (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)); *see also White*, 2021 WL 858662 at *20 (noting that "if relevant evidence is not mentioned, the Court cannot discern whether the ALJ discounted or overlooked the evidence"). In this case, the ALJ did not adequately explain his reasoning regarding his treatment of medical opinions. He mentioned "supportability" and "consistency" but did not explain how he considered those factors other than making conclusory statements. (Tr. 31-33). Though the ALJ provided a one-year bright line to justify his findings, he did not meaningfully explain that cutoff mark, and he contradicted himself when utilizing it. Of the two state agency consultant opinions he found persuasive, they both relied exclusively on other medical evidence generated within one year of Claimant's stroke. Moreover, the ALJ noted that both were consistent with earlier opinions the ALJ had found unpersuasive. Regarding the one treating physician's opinion the ALJ found persuasive, he failed to meaningfully consider the findings contained within that opinion when formulating Claimant's RFC. In sum, the ALJ failed to "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).

Furthermore, even if Claimant's impairments had fully improved when the ALJ rendered his decision, the ALJ's approach to the medical record evidence overlooks the possibility that

24

Claimant might have been entitled to a period of closed benefits. By taking the position that he would not consider opinions rendered regarding Claimant's condition within the year following Claimant's stroke, the ALJ could not have adequately considered whether Claimant suffered from various impairments after a stroke which may have combined to be disabling for the required 12-month period. The Sixth Circuit has held that while "[t]he [Social Security Act] itself does not provide for a closed period of benefits ... we think it clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). At least one court in this circuit has found a claimant could be entitled to a closed period of benefits when her impairments precluded her from working in the past even when she was able to work at the time of an ALJ hearing. *See Widener v. Astrue*, No. CIV. A. 08-107-DLB, 2009 WL 2778215, *5 (E.D. Ky. Aug. 27, 2009) (remanding the case when "the ALJ did not specifically make a finding regarding whether Claimant's impairments entitle her to a closed period of disability benefits"). The Court acknowledges that the ALJ would not have erred in failing to include an explicit finding as to whether Claimant qualified for a closed period of benefits. *See Vest v. Saul*, No. 1:18-CV-101, 2020 WL 13468851, *7 (E.D. Tenn. Mar. 2, 2020) (collecting cases) (explaining that "although there is no apparent binding authority on the issue, other courts within this circuit (including this district) have held that ALJs are not required to make explicit findings regarding a closed period of disability"). However, that does not relieve the ALJ of his obligation to consider whether a closed period of benefits should be awarded. *Vest*, 2020 WL 13468851, *7 (finding that the ALJ had implicitly concluded the claimant did not qualify for a closed period of benefits). Here, given the methodology utilized by the ALJ in evaluating the medical evidence of record, i.e., fully discounting any opinions rendered within a year of

Claimant's stroke, it appears clear that the ALJ could not have appropriately considered whether there was a closed period of disability.

## IV.    CONCLUSION

After a careful review of the record in this matter and for the reasons stated above, the Court finds that the ALJ failed to adequately develop the record. In reaching its conclusion, the Court emphasizes the importance of complying with agency procedures to protect claimants from "bewilder[ment] when told by an administrative bureaucracy that [they are] not. . ." disabled when they have previously been told that they are disabled. *Hardy*, 2021 WL 3702170, at *6 (quoting *Wilson*, 378 F.3d at 544). The methodology utilized by the ALJ in assessing the medical evidence of record does not comport with the requirements set forth in applicable law. As such, the Court cannot determine that substantial record evidence supports the ALJ's determination that Claimant was not entitled to disability benefits, whether it be for a closed period or on an ongoing basis. Accordingly, the Court **RECOMMENDS** that Claimant's Motion [Doc. 18] be **GRANTED** as outlined herein, and Commissioner's Motion [Doc. 23] be **DENIED**. More specifically, the Court **RECOMMENDS** that the case be **REMANDED** for further consideration as outlined herein., pursuant to 42 U.S.C. § 405(g).[2]

Respectfully submitted,

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[2] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).